**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

JOEL PAEZ in his individual capacity and as the administrator for the Estate of Manuel Esteban Paez Teran, BELKIS TERAN,

    Plaintiffs,

            v.

RYAN LONG, et al.

    Defendants.

Civil Action No.
1:24-cv-5780-SDG

## OPINION AND ORDER

This matter is before the Court on Plaintiffs Joel Paez and Belkis Teran's motion for leave to file an amended complaint [ECF 21] and Defendants' motion to dismiss Plaintiffs' original complaint [ECF 18]. Because the amendment as proposed would be futile, Plaintiffs' motion for leave to file an amended complaint is **DENIED**. Further, Defendants' motion to dismiss Plaintiffs' original complaint is **GRANTED**.

## I.    INTRODUCTION

### A. Factual Background[1]

This case arises from the shooting death of a protestor by state law enforcement officers. On January 18, 2023, Manuel Esteban Paez Teran, the adult

---

[1] The Court treats all well-pleaded facts in the complaint and proposed amended complaint as true and construes them in the light most favorable to Plaintiffs. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999).

child of Plaintiffs Joel Paez and Belkis Teran, was camping in a tent in Intrenchment Creek Park, adjacent to the construction site of a proposed public safety training facility by the City of Atlanta in DeKalb County, Georgia, widely known as "Cop City."[2] The construction of Cop City attracted significant public attention and was the subject of criticism and opposition by several advocacy and community groups and other members of the public, including Paez Teran.[3] Paez Teran was camping in the park as part of an ongoing occupation-style protest against Cop City.[4]

That morning, Defendant Ryan Long, a Georgia Bureau of Investigations (GBI) special agent, ordered the clearing of the park and the arrest of any person found there.[5] As part of this sweep to clear the park, six Georgia State Patrol (GSP) officers—including Defendants Mark Lamb and Bryland Myers—approached Paez Teran's tent with guns drawn.[6] The GSP officers told Paez Teran that they were going to place Paez Teran under arrest for criminal trespass.[7] The GSP officers ordered Paez Teran to exit the tent, and stated that if Paez Teran did not

---

[2]   ECF 21-1, ¶¶ 10, 16, 17.

[3]   *Id.* ¶¶ 13, 14.

[4]   *Id.* ¶¶ 15, 17, 34.

[5]   *Id.* ¶ 37.

[6]   *Id.* ¶¶ 42, 43.

[7]   *Id.* ¶ 44.

comply, they would release a chemical agent.[8] Paez Teran did not exit the tent.[9]

On Defendant Lamb's instruction, Defendant Myers released pepper balls into

Paez Teran's tent, which are designed to cause pain to the eyes, mouth, nose, and

lungs, and to impair vision and breathing.[10] Paez Teran panicked and fired several

bullets from inside the tent, which hit one of the arresting officers.[11] The GSP

officers, including Defendants Lamb and Myers, returned fire, killing Paez

Teran.[12]

### B. Procedural Background[13]

On December 17, 2024, Plaintiffs filed their original complaint on behalf of

Paez Teran, bringing constitutional civil rights claims against Defendants for false

---

[8]   *Id.* ¶ 48.

[9]   *Id.* ¶ 53.

[10]  *Id.* ¶¶ 60, 63–66.

[11]  *Id.* ¶¶ 89, 90, 92.

[12]  *Id.* ¶ 93.

[13]  The Court notes that it found several apparent drafting mistakes in Plaintiffs' submissions. For example, in Plaintiffs' proposed amended complaint, an allegation contains what appears to be an internal note between Plaintiffs' counsel asking whether they should "add facts about it being a ton of officers, saying lots of things, all with all sorts of weapons." *Id.* ¶ 48. As a further example, in their response to Defendants' motion to dismiss, Plaintiffs appear to confuse case names relevant to their First Amendment retaliation argument. ECF 25, at 17–18. Far from mere typographical errors, these mistakes are material and have the potential to reveal attorney work-product, misstate the applicable law, and generally complicate litigation. Plaintiffs' counsel are advised to practice more diligence in its submissions to this Court, or to any court.

arrest and excessive force under the Fourth Amendment and retaliation under the First Amendment.[14] On March 24, 2025, Defendants filed a motion to dismiss, asserting that Plaintiffs' complaint failed to state a claim and that Defendants are entitled to qualified immunity.[15] On April 24, Plaintiffs submitted a motion for leave to file an amended complaint, with an attached proposed amended complaint, asserting an additional claim for wrongful death against Defendants.[16] On January 13, 2026, the Court ordered Plaintiffs to file a response to Defendants' motion to dismiss, which Plaintiffs did on January 27.[17] The motions have been fully briefed by the parties and are ripe for resolution.[18]

---

[14]   ECF 1.

[15]   ECF 18.

[16]   ECF 21.

[17]   ECFs 24, 25. The Court notes that the parties, in briefing Defendants' motion to dismiss Plaintiffs' original complaint, raised arguments concerning Plaintiffs' proposed amended complaint. ECFs 25, 26. For purposes of evaluating Plaintiffs' motion for leave to file an amended complaint, the Court will primarily consider arguments raised in the briefing on that particular motion. ECFs 21, 23. Nevertheless, the Court has reviewed the arguments raised in the motion to dismiss submissions as well and determined that it does not alter the Court's conclusions.

[18]   ECFs 22, 23, 25, 26.

II.    **PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

### A.    Legal Standard

Federal Rule of Civil Procedure 15 allows a party to amend its pleadings no later than 21 days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1)(B). After the time for amendment as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Plaintiffs filed their motion for leave to file an amended complaint, and their proposed amended complaint, more than 21 days after Defendants filed their motion to dismiss under Rule 12(b)(6).[19] Thus, Plaintiffs must seek leave to file an amended complaint. *Id.* Although the Court "should freely give leave when justice so requires"—*id.* — "[a] district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss." *Christman v. Walsh*, 416 Fed. Appx. 841, 844 (11th Cir. 2011); *see also Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) ("[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.") (*quoting Halliburton*

---

[19]    ECFs 18, 21.

*& Assoc., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir. 1985)); *see also Bazemore v. U.S. Bank, N.A.*, 167 F. Supp. 3d 1346, 1355 (N.D. Ga. 2016) ("[T]he same standard of legal sufficiency as applied under a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is used to determine futility.").

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must [ ] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement is satisfied when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). "A complaint does not state a facially plausible claim for relief if it shows only a sheer possibility that the defendant acted unlawfully." *Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 Fed. Appx. 318, 322 (11th Cir. 2009).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). The Court does not, however, accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Using the motion to dismiss standard, the Court will now

address whether Plaintiffs' proposed amended complaint has stated a claim, or conversely, whether the proposed amendment is futile.

### B.    Discussion

Plaintiffs seek to bring their claims under 42 U.S.C. § 1983 (Section 1983). Section 1983 does not itself create any substantive rights. *Baker v. McCollan*, 443 U.S. 137, 140, 144 n.3 (1979). Rather, it provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Id*. Here, Plaintiffs' Section 1983 claims against Defendants are based on violations of the First and Fourth Amendments. To succeed on these claims, Plaintiffs "must prove that [Paez Teran] was deprived of a constitutionally guaranteed right under color of state law." *Tillman v. Coley*, 886 F.2d 317, 319 (11th Cir. 1989). Defendants argue that Plaintiffs have failed to state a claim and that Defendants are entitled to qualified immunity.[20] The Court will first address qualified immunity.

"While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be ... raised and considered on a motion to dismiss." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their

---

[20]    ECF 22.

conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To establish the defense of qualified immunity, the burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority. If, and only if, the defendant does that will the burden shift to the plaintiff to establish that the defendant violated clearly established law." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (emphasis added) (citation omitted).

To establish that they were acting within the scope of their discretionary authority, Defendants must show that they were "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within [their] power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). Courts examine "the general nature of the [defendants'] action[s], temporarily putting aside the fact that [the actions] may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Id.* at 1266. Under the first prong, a defendant "must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with[in] his legitimate job description." *Id.* If met, the Court must determine

whether the defendant executed the "job-related function—that is, pursuing [his] job-related goals—in an authorized manner." *Id.*

In the case at hand, Plaintiffs allege that "no Defendant was informed that they had the authority to issue criminal trespass warnings" and that neither "GBI nor the City of Atlanta had the authority to exclude any person" from the park.[21] At least in their response to Plaintiffs' motion for leave to file an amended complaint, Defendants do not address these allegations.[22] However, Plaintiffs' proposed amended complaint identifies Defendants as employees of two state law enforcement agencies that "were acting under color of state law" at the time they encountered Paez Teran.[23] The Eleventh Circuit has made clear that the "apprehension of suspected criminals is a core discretionary function of the police." *Hunter v. City of Leeds*, 941 F.3d 1265, 1278 n.16 (11th Cir. 2019) (citing *Crenshaw v. Lister*, 556 F.3d 1283, 1289–90 (11th Cir. 2009) (per curiam)). Nothing about Plaintiffs' conclusory allegations to the contrary disturbs this settled point of law.

Now that discretionary authority has been established, "the burden shifts to [Plaintiffs] to show that qualified immunity is not appropriate." *Vinyard v. Wilson*,

---

[21]   ECF 21-1, ¶¶ 38, 40.

[22]   ECF 22.

[23]   ECF 21-1, ¶¶ 6–8.

311 F.3d 1340, 1346 (11th Cir. 2002). Qualified immunity is not appropriate (1) if there was a constitutional violation and (2) that violation was of a clearly established right. *Rodriguez v. Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002). The bar to meet this standard is quite high. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." *Id.* (*quoting Lassiter v. Ala. A&M Univ., Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994)).

### 1.    Fourth Amendment False Arrest Claims

#### i.    Constitutional Violation

Plaintiffs seek to bring claims against Defendants for false arrest under the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. Arrests constitute "seizures" and must be reasonable given the circumstances. *Dist. of Columbia v. Wesby*, 583 U.S. 48, 56 (2018). "A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *Id.* Probable cause exists if "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the

suspect has committed, is committing, or is about to commit an offense." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). "Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'" *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (quoting *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990)). Further, probable cause is a "fluid concept" that "deals with probabilities and depends on the totality of the circumstances[.]" *Wesby*, 583 U.S. at 57.

"Even when a law enforcement officer arrests an individual without probable cause, qualified immunity may still protect the officer. '[A]ll that is required for qualified immunity to be applicable to an arresting officer' is arguable probable cause." *Warren v. Scott*, No. 1:12-CV-4299-ODE, 2014 WL 11858173, at *4 (N.D. Ga. May 23, 2014) (quoting *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) (citation omitted)). Arguable probable cause exists "where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest' the plaintiffs." *Scarbrough*, 245 F.3d at 1302 (quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998)).

11

Paez Teran's arrest was premised on criminal trespass.[24] Georgia law defines criminal trespass as occurring when one "knowingly and without authority ... [e]nters upon the land or premises of another person ... after receiving, prior to such entry, notice . . . that such entry is forbidden . . . ." O.C.G.A. § 16–7–21(b)(2). Further, criminal trespass occurs when a person "knowingly and without authority ... [r]emains upon the land or premises of another person ... after receiving notice . . . to depart." O.C.G.A. § 16-7-21(b)(3). "An arresting officer for criminal trespass is not required to make a final legal determination of whether an arrestee has the authority to enter or remain on the premises." *Bryant v. Reese*, No. 1:19-cv-45-TWT, 2021 WL 2379397, at *4 (N.D. Ga. June 10, 2021) (citing *Patterson v. State*, 274 Ga. 713, 715 (2002)). "The arresting officer only needs to have 'reasonably trustworthy information about facts and circumstances sufficient for a prudent person to believe [that] the accused has committed an offense.'" *Id.* (citing *Patterson*, 274 Ga. at 715).

As a final point of governing law, DeKalb County Ordinance Ch. 19, art. II, § 19-26 sets parameters for the hours in which DeKalb County parks are open to the public.[25] Specifically, the ordinance states "Parks and recreation facilities shall

---

[24]    *Id*. ¶ 44.

[25]    Paez's complaint does not mention the DeKalb County Ordinance. However, the Court may take judicial notice on its own of facts that are not subject to reasonable dispute. Fed R. Evid. 201. Accordingly, the Court takes judicial

open at 7:00 a.m., and shall close at sunset, except that parks containing lighting for night use shall close at 11:00 p.m." Further, the ordinance states that "applicable closing signs shall be conspicuously posted at all park and recreation facilities and any deviation from these times must be approved in writing by the county."

Plaintiffs' response to Defendants' motion for leave to file an amended complaint makes numerous assertions that Defendants lacked probable cause to arrest Paez Teran, including that the ordinance did not apply to the area where Paez Teran was camping, that Defendants were not aware of the park ordinance at the time of their interaction with Paez Teran, and that the park was not marked with signage alerting Paez Teran that the park was closed to the public at certain hours.[26] However, these arguments are immaterial to the question of whether Defendants had arguable probable cause to effectuate Paez Teran's arrest. "Showing arguable probable cause does not…require proving every element of a crime." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 735 (11th Cir. 2010). Further,

---

notice of the ordinance as public records "whose accuracy cannot reasonably be questioned." *Id.; see also Sweeting v. City of Atlanta,* No. 1:22-CV-03185-JPB, 2023 WL 4672243, at *3 n. 3 (N.D. Ga. July 20, 2023*)* (taking judicial notice of portions of a municipal code as "fact that is not subject to reasonable dispute"). The DeKalb County Ordinance can be found at the following webpage: https://library.municode.com/ga/dekalb_county/codes/code_of_ordinanc es?nodeId=CODECO_CH19PARE_ARTIIPAREFARU.

[26]   ECF 23, at 6–7.

"[the Eleventh Circuit has] never pronounced a rigid requirement that an arresting officer must have specific evidence of the subjective intent and knowledge of a subject beyond the subject's conduct that otherwise gives rise to probable cause to arrest." *Gates v. Khokhar*, 884 F.3d 1290, 1300 (11th Cir. 2018).

Plaintiffs' proposed amended complaint alleges that Defendants encountered Paez Teran while the decedent was camping in a tent in the park as part of an ongoing "occupation-style" protest.[27] It further alleges that, while Defendants encountered Paez Teran at some point in the morning after the park was open to the public, the decedent had been sleeping in the park and "had just woken up."[28] Finally, the proposed amended complaint states that Paez Teran refused to comply with orders to exit the tent.[29] Given these facts, a reasonable officer could have believed that Paez Teran was sleeping in the park overnight before it was open to the public and that their presence there, coupled with the decedent's subsequent refusal to comply with orders to leave, was a violation of Georgia's criminal trespass statutes. Accordingly, Defendants had at least arguable probable cause to place Paez Teran under arrest for criminal trespass.[30]

---

[27]   ECF 21-1, ¶¶ 15, 17.

[28]   *Id*. ¶¶ 16, 42, 58.

[29]   *Id*. ¶¶ 48, 53.

[30]   In addition to criminal trespass, Defendants assert that they had arguable probable cause to arrest Paez Teran for obstruction. ECF 22, at 10. Plaintiffs'

### ii.     Clearly Established Right

For the second prong of the qualified immunity analysis the Court "must determine whether the [constitutional] right was clearly established such that a reasonable official would understand that what he is doing violates that right." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citing *Bashir v. Rockdale Cnty.*, 445 F.3d 1323, 1327 (11th Cir. 2006)). Cases from the United States Supreme Court, the Eleventh Circuit, and the Georgia Supreme Court establish whether the law, at the time of the violation, provided "fair warning" to a reasonable officer that his or her actions were unconstitutional. *Id.* "Exact factual identity with a previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Id.* (citing *Vinyard*, 311 F.3d at 1350). Courts should not, however, "define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam) (citation omitted). "What matters is whether the state of the law gave the defendants fair warning that their alleged conduct was unconstitutional." *Washington v. Rivera*, 939 F.3d 1239, 1245 (11th Cir. 2019) (citing *Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003)).

---

proposed amended complaint acknowledges that Paez Teran refused to follow orders to leave the tent. ECF 21-1, ¶¶ 48, 53. "[R]efusal to comply with an officer's order is sufficient to form the basis of an obstruction charge." *See Warren*, 2014 WL 11858173, at *6. The Court need not evaluate this further in light of its conclusion concerning the criminal trespass arrest.

15

As discussed above, Plaintiffs have not sufficiently alleged that Defendants violated a constitutional right at all, much less a clearly established one. And they point to no legal authority for such a proposition. While "a case directly on point is not required" to establish that a right is clearly established, "'existing precedent' [must place] the 'constitutional question beyond debate.'" *Martinez v. City of Pembroke Pines*, 648 F. Appx. 888, 894 (11th Cir. 2016) (quoting *Taylor v. Barkes*, 575 U.S. 822, 825 (2015)). Plaintiffs have not met their burden in this regard.

In sum, because Defendants are entitled to qualified immunity, Plaintiffs' proposed amended claims for false arrest are futile.

### 2. Fourth Amendment Excessive Force Claims

#### i. Constitutional Violation

Plaintiffs seek to bring additional Fourth Amendment claims against Defendants Lamb and Myers for excessive force, relating to their alleged use of pepper balls against Paez Teran. Excessive force claims under the Fourth Amendment are subject to an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). That reasonableness is determined from the perspective of a reasonable officer on the scene. *Id.* at 396. Relevant factors in evaluating the reasonableness of an officer's use of force include (1) "the severity of the crime at issue," (2) "whether the suspect posed an immediate threat to the safety of the officers or others," (3) whether the suspect "was actively resisting

16

arrest or attempting to evade arrest by flight," (4) "the need for the application of force," (5) "the relationship between the need and amount of force used," and (6) "the extent of the injury inflicted." *See Acosta v. Miami-Dade Cty.*, 97 F.4th 1233, 1239 (11th Cir. 2024). In assessing reasonableness, it is also appropriate to take account of the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

Defendants Lamb and Myers' use of force was objectively reasonable given the facts alleged. Plaintiffs' proposed amended complaint acknowledges that Paez Teran refused to comply with law enforcement orders to exit the tent even after being warned that pepper balls would be deployed.[31] The Eleventh Circuit has ruled that "using pepper spray is reasonable…where the plaintiff was either resisting arrest or refusing police requests." *Vinyard*, 311 F.3d at 1348.[32] The allegations here establish that Paez Teran was not secured, had not surrendered to

---

[31]   ECF 21-1, ¶¶ 48, 53.

[32]   The Court is not aware of any cases from this Circuit that address the similarities or differences between the use of pepper balls and pepper spray. However, the Ninth Circuit recently defined pepper balls as "concentrated powdered chemical projectiles that induce a physical reaction similar to that caused by pepper spray." *Puente v. City of Phoenix*, 123 F.4th 1035, 1044 (9th Cir. 2024).

law enforcement, and was actively refusing to comply with law enforcement orders.[33] Further, Plaintiffs' allegations that Paez Teran "did not pose any threat to the safety of the officers," "did not threaten the officers," and that Paez Teran's "voice was calm,"[34] do not move the needle in Plaintiffs' favor given that passive resistance is still considered resistance for purposes of evaluating an excessive force claim. *See Jones v. Michael*, 656 Fed. Appx. 923, 931 (11th Cir. 2016). Further, Defendants Lamb and Myers' objectively perceived threat to their personal safety or the safety of the public is heightened by the proposed amended complaint's allegations that Paez Teran remained in the tent throughout the encounter, which demonstrates that Defendants Lamb and Myers could not sufficiently view and assess the extent of the threat posed by Paez Teran.[35] Thus, the Court concludes that "[a]n objectively reasonable officer . . . could have believed that [Paez Teran] posed a physical threat to the safety of the arresting officers and that pepper [balls] was an acceptable way to avoid a more serious physical confrontation between the officers and [Paez Teran]: protecting the safety of the arrestee as well as that of the officers." *Id.* Defendants Lamb and Myers' alleged use of pepper balls to elicit compliance was objectively reasonable.

---

[33]   ECF 21-1, ¶¶ 48, 53.

[34]   *Id.* ¶¶ 54, 55, 58.

[35]   *Id.* ¶¶ 48, 53, 58.

Further, Plaintiffs appear to allege in their proposed amended complaint that pepper balls can cause death, and thus, Defendants Lamb and Myers' alleged use of pepper balls constituted "deadly force."[36] Plaintiffs point to Eleventh Circuit case law instructing that the use of certain forms of "less lethal" munition can constitute "deadly force," but the cited case concerns the use of baton launchers fired at close range rather than the use of chemical agents like pepper balls.[37] *See Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). The Eleventh Circuit even noted in that case that the use of such weapons is *not* similar to the use of chemical agents. *Id.* ("Although there are some cases dealing with 'less lethal' weapons, such as pepper spray, none of them is 'materially similar' to the facts in this case."). While the intentional deployment of pepper balls in a small, enclosed space like Paez Teran's tent arguably brushes up against the farther reaches of force contemplated by the Fourth Amendment, "'as a means of imposing force, pepper spray is generally of limited intrusiveness,' and it is 'designed to disable a suspect without causing permanent physical injury.'" *Vinyard*, 311 F.3d at 1348 (quoting *Gainor v. Douglas Cty.*, 59 F. Supp. 2d 1259, 1287 (N.D. Ga. 1998)).

To the extent that Plaintiffs also premise their excessive force claims on Defendants Lamb and Myers' use of deadly force against Paez Teran in the form

---

[36]    *Id.* ¶ 61; ECF 23, at 11–12.

[37]    ECF 23, at 11.

19

of gunfire, "[i]t is reasonable, and therefore constitutionally permissible, for an officer to use deadly force against a person who poses an imminent threat of serious physical harm to the officer or others." *Martinez*, 648 Fed. Appx. at 893. Plaintiffs' allegations confirm that Paez Teran fired several bullets from under the cover of a tent, that the bullets hit one of the officers, and that Defendants Lamb and Myers allegedly "returned" the use of deadly force only after Paez Teran initiated it.[38] The Court finds that Defendants Lamb and Myers' alleged use of deadly force was objectively reasonable under these circumstances. *See Menuel v. City of Atlanta*, 25 F.3d 990, 996 (11th Cir. 1994) (finding use of deadly force objectively reasonable when officers "resort[ed] to deadly force only when assaulted with deadly force.").

Finally, as to any allegations that Defendants Lamb and Myers' conduct provoked Paez Teran to initiate gunfire, the Eleventh Circuit has examined excessive force cases where Plaintiffs allege that law enforcement officers' "tactical mistakes" provoked the use of deadly force. *See Oakes v. Anderson*, 494 Fed. Appx. 35, 39–40 (11th Cir. 2012); *see also Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir. 2009). In those cases, the Eleventh Circuit noted that it is not the court's task "to evaluate what the officers could or should have done in hindsight. The sole

---

[38]   ECF 21-1, ¶¶ 90–93.

20

inquiry is whether the officer's actions, as taken, were objectively reasonable under all the circumstances." *Id.*

Here, the Court finds that Defendants Lamb and Myers' use of pepper balls to force Paez Teran's compliance, and their use of deadly force in response to Paez Teran's gunfire, was objectively reasonable, meaning there was no constitutional violation.

### ii.   Clearly Established Right

Even assuming that Plaintiffs sufficiently allege a constitutional violation of excessive force in their proposed amended complaint, Plaintiffs fail to cite any authority for the proposition that such a violation, under these facts as alleged, infringed a clearly established right. As discussed, the law is clear that the use of chemical agents such as pepper balls is reasonable when an individual refuses to comply with law enforcement orders. *Jones*, 656 Fed. Appx. at 931. Further, the law is well settled that a law enforcement officer may use deadly force when he "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Tennessee v. Garner,* 471 U.S. 1, 11 (1985). Plaintiffs have failed to meet their burden of alleging that Defendants Lamb and Myers' unconstitutional excessive force, if any, violated a clearly established right.

21

In sum, because Defendants Lamb and Myers are entitled to qualified immunity, Plaintiffs' proposed amended claims against them for excessive force are futile.

### 3. First Amendment Retaliation Claim

### *i.* Constitutional Violation

Plaintiffs seek to bring a claim against Defendant Long for retaliation in violation of the First Amendment. Specifically, Plaintiffs allege that Paez Teran's presence in the park was political speech protected by the First Amendment, and that the decedent was targeted by Defendant Long for exercising First Amendment rights.

A First Amendment retaliation claim requires one to plead: "(1) that the [speaker] engaged in constitutionally protected speech, (2) that the defendant's retaliatory conduct adversely affected the protected speech, (3) and that the retaliatory action caused the adverse effect on [the speaker's] speech." *Turner v. Williams*, 65 F.4th 564, 579 (11th Cir. 2023) (internal quotation marks omitted). "To prevail . . . a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the [speaker's] 'subsequent injury.'" *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019).

As established in relation to Plaintiffs' false arrest claims, Defendants had at least arguable probable cause to arrest Paez Teran. And "[t]he presence of

probable cause should generally defeat a First Amendment retaliatory arrest claim." *Id.* at 405. "[W]hen an officer has arguable probable cause to arrest, he is entitled to qualified immunity both from Fourth Amendment claims for false arrest and from First Amendment claims stemming from the arrest." *Gates*, 884 F.3d at 1298. Plaintiffs here have brought this claim solely against Defendant Long, who the proposed amended complaint alleges was not an arresting officer but the individual who "issued the directive" to clear the park.[39] Regardless, if the predicate arrest is supported by probable cause, and thus no constitutional violation has occurred, non-arresting officers who devised the policy from which the arrest stems are also entitled to qualified immunity. *See Turner*, 65 F.4th at 589 ("An official policy cannot be the 'moving force' of a constitutional violation if there is no constitutional violation."). However, the United States Supreme Court has identified two exceptions to this general rule. *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1306 (11th Cir. 2019) (citing *Nieves*, 587 U.S. at 407; *Lozman v. City of Riviera Beach*, 585 U.S. 87, 99-101 (2018)).

Under the first exception, probable cause will not bar a First Amendment retaliation claim where plaintiff "presents objective evidence that the plaintiff was arrested when people who had committed the same conduct, but who had not

---

[39]   *Id.* ¶¶ 37, 71.

engaged in the same sort of protected speech, had not been arrested by that officer." *DeMartini*, 942 F.3d at 1306 (citing *Nieves*, 587 U.S. at 407). This exception "'is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so.'" *Turner*, 65 F.4th at 585 (quoting *Nieves*, 587 U.S. at 406). The Eleventh Circuit has reiterated that this exception is "narrow and requires objective evidence." *Id*. at 589.

Plaintiffs' proposed amended complaint vaguely alleges that "other people long camped at Intrenchment Creek Park without being arrested or subject to violent shows of police force unless they had been suspected of committing some crime."[40] However, this allegation, and the proposed amended complaint generally, fails to provide any objective evidence that identifies those other campers or shows that those campers were not arrested or subjected to violence by police. This conclusory allegation is not enough to meet this "narrow" exception, even under the less discerning motion to dismiss standard. *See Summers v. City of Atlanta*, No. 1:25-CV-2225-TWT, 2025 WL 3678889, at *6 (N.D. Ga. Dec. 18, 2025) (finding that plaintiff's bare assertion that officers "never before . . . executed a search warrant" similar to warrant issued against her failed to meet exception because it was conclusory and did not "attempt to identify similarly

---

[40]    *Id.* ¶ 28.

situated individuals who were not subjected to a similar search warrant."). Thus, this exception does not apply.

Under the second exception, First Amendment retaliation claims stemming from criminal arrests will not be barred when the plaintiff can show the common existence of "five 'unique' factual circumstances," identified by the U.S. Supreme Court in *Lozman*, 585 U.S. at 99–101. While Plaintiffs' proposed amended complaint indeed makes allegations that meet at least some of these factors, including premeditation and an alleged ongoing plan to vilify Cop City protestors like Paez Teran,[41] the Eleventh Circuit has found in favor of this exception only where "there was little relation between the 'protected speech that prompted the retaliatory policy and the criminal offense . . . for which the arrest was made.'" *Turner*, 65 F.4th at 586 (quoting *DeMartini*, 942 F.3d at 1294). Here, Plaintiffs' proposed amended complaint alleges that the criminal offense for which Paez Teran was arrested—criminal trespass—was directly related to the decedent's ongoing "occupation-style" protest in the park.[42] In other words, Paez Teran's presence at the park was entirely premised on the decedent's political speech against Cop City.[43] Thus, this exception does not apply, and Plaintiffs have failed

---

[41]   *Id.* ¶¶ 71–82.

[42]   *Id.* ¶¶ 15, 34.

[43]   *Id.*

to state a constitutional violation as to their First Amendment retaliation claim against Defendant Long.

### ii.    Clearly Established Right

Plaintiffs again fail to identify any authority which establishes that Paez Teran's First Amendment rights, if any under these alleged circumstances, were clearly established. As discussed, to successfully state "a First Amendment retaliatory arrest claim, the Supreme Court has instructed that a plaintiff 'must plead and prove the absence of probable cause for the arrest.'" *Turner*, 65 F.4th at 581 (quoting *Nieves*, 587 U.S. at 402).  Plaintiffs have not done so here.

In sum, because Defendant Long is entitled to qualified immunity, Plaintiffs' proposed amended claim against him for First Amendment retaliation is futile.

### 4.    Wrongful Death Claim

Plaintiffs' proposed amended complaint raises an entirely new claim not alleged in their original complaint, namely, a wrongful death claim under Section 1983.[44] But because Plaintiffs' allegations in this regard fail to state a claim for wrongful death, their proposed amendment is likewise futile.

---

[44]   *Id.* ¶ 86. It is unclear whether the proposed wrongful death claim is against only some or all the Defendants. For purposes of this Order, the Court will assume the latter.

"Georgia law authorizes parents to recover for the wrongful death of their child if the child leaves no surviving spouse or children." *Monumental Life Ins. Co. v. Smith*, No. 1:07-CV-0558-JOF, 2008 WL 11336660, at *2 (N.D. Ga. Jan. 4, 2008). "Common law tort principles of damages and causation . . . apply in this § 1983 context." *Jackson v. Sauls*, 206 F.3d 1156, 1168 (11th Cir. 2000). "For damages to be proximately caused by a constitutional tort, a plaintiff must show that, except for that constitutional tort, such injuries and damages would not have occurred and further that such injuries and damages were the reasonably foreseeable consequences of the tortious acts or omissions in issue." *Id.* Accordingly, "[a] defendant's actions are not the proximate cause of a plaintiff's injury where there was an independent intervening cause." *Buckman v. Halsey*, No. 20-13596, 2021 WL 4127067, at *3 (11th Cir. Sept. 10, 2021) (citing *Troupe v. Sarasota Cty.*, 419 F.3d 1160, 1166 (11th Cir. 2005)).

Plaintiffs' proposed amended complaint alleges that Paez Teran "panicked" and fired a gun several times from under the cover of the tent, and did not intend to shoot any of the officers.[45] The GSP officers, including Defendants Lamb and Myers, returned fire, which led to Paez Teran's death.[46] Plaintiffs argue that Paez

---

[45]   *Id.* ¶¶ 89–92. How Plaintiffs could possibly know Paez Teran's state of mind or intent is anyone's guess, but for purposes of resolving Plaintiffs' motion to amend these allegations will be presumed to be true.

[46]   *Id.* ¶ 93.

Teran's death was proximately caused by Defendants' actions in planning the raid on the park and arresting and firing pepper balls at the decedent, and that, but for Defendants' preceding actions creating a "dangerous and volatile" situation, Paez Teran would not have died.[47] The Court has already concluded that Defendants Lamb and Myers' use of deadly force was objectively reasonable in response to Paez Teran initiating gunfire. And Defendant Long is not even alleged to have been at the scene to use force at all. Thus, because no constitutional violation occurred, wrongful death damages cannot follow. *See Jackson*, 206 F.3d at 1168.

Further, when considering Plaintiffs' "foreseeability" argument—that Defendants were somehow the proximate cause of Paez Teran initiating gunfire that led to their death—Plaintiffs' wrongful death claim fails. "[W]hen a uniformed officer . . . draws his gun during an illegal stop or arrest . . . persons do not normally begin shooting." *Id.* at 1169. Thus, Defendants could not "reasonably foresee a shooting in response to" their arrest and use of pepper balls against Paez Teran. Because Defendants could not reasonably foresee that Paez Teran would initiate gunfire in response to their actions to remove the decedent from the park, Defendants' actions cannot be considered the proximate cause of Paez Teran's death. *See Yates v. Mack*, No. CV 20-00131-KD-B, 2021 WL 6063956, at *10 (S.D. Ala.

---

[47]   ECF 23, at 12–14.

Dec. 22, 2021) ("[T]he causation link is broken if an officer identifies himself and in response is met with gunfire.").

The Eleventh Circuit has examined—albeit at the summary judgment stage—similar wrongful death claims to this one and found that it was barred by defendants' justified use of deadly force. In *Oakes v. Anderson*, like the present case, plaintiffs brought constitutional and wrongful death claims resulting from the shooting death of their father by defendant law enforcement officers. 494 Fed. Appx. at 35. The decedent in *Oakes*, like Paez Teran here, was initially hidden from defendants' view, with the decedent in *Oakes* in a vehicle and the decedent here in a tent.[48] *Id.* at 38. Both interactions "escalated rapidly," with both decedents failing to comply with officer demands.[49] *Id.* at 39. And while in *Oakes* the decedent never had the chance to actually discharge his weapon and was eventually fired upon only for "jerk[ing] his arm suddenly," *id.,* Paez Teran actually fired the weapon several times before fire was "returned."[50] In finding that the officers' use of force in *Oakes* was reasonable, the Eleventh Circuit noted that "[t]his is 'exactly the type of tense, uncertain and rapidly evolving crisis . . .' when officers 'reasonably react[

---

48   ECF 21-1, ¶¶ 53, 58, 90.

49   *Id.* ¶¶ 48, 53.

50   *Id.* ¶¶ 90, 93.

29

] to what they perceive [ ] as an immediate threat of serious harm to themselves.'"
*Id.*[51]

Because Paez Teran initiated gunfire with the GSP officers, Plaintiffs cannot maintain that Defendants' actions were the proximate cause of the use of deadly force that ultimately ended the decedent's life. Thus, Plaintiffs' proposed amended complaint fails to state a claim for wrongful death under Section 1983.

Plaintiffs' proposed amended complaint fails to state a claim for each of the claims it seeks to bring against Defendants. Accordingly, their proposed amended complaint is futile, and their motion for leave to file an amended complaint is denied.

## III.   DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs' original complaint contains roughly the same, if not arguably less exacting, allegations as the proposed amended complaint, with certain strategic exceptions.[52] For example, the original complaint contains an allegation noticeably

---

[51] There are distinguishing facts between *Oakes* and the case at bar too. The decedent in *Oakes* was perceived by the law enforcement defendants to be "an emotionally distraught man who had threatened suicide and who likely had a gun," *id.* at 38, whereas Plaintiffs' proposed amended complaint contains no allegations that Paez Teran was emotionally distraught nor that Defendants had an opportunity to even observe the decedent before shots were fired. ECF 21-1, ¶¶ 57–58. If anything, these distinctions further validate that Plaintiffs' wrongful death claim allegations are insufficient.

[52] *Compare* ECF 1 *with* ECF 21-1.

absent from the proposed amended complaint: that Paez Teran verbally refused to comply with law enforcement's orders to exit the tent.[53] The Eleventh Circuit has disapproved of proposed amendments made in "bad faith," which are "transparent attempt[s] to get around" immunity concerns raised by a motion to dismiss. *Reliford v. City of Tampa Housing Auth.*, 190 Fed. Appx. 928, 928 (11th Cir. 2006). Plaintiffs appear to have done exactly that here: excluded certain allegations in their proposed amended complaint to overcome immunity arguments raised in Defendants' previously filed motion to dismiss.

Regardless, given that Plaintiffs submitted their proposed amended complaint to "provide the Court (and the parties) with a more specific basis for Plaintiffs' claims" over Plaintiffs' original complaint,[54] and the proposed amended complaint still fails to state a claim, the original complaint also is due to be dismissed. In other words, for all the same reasons the proposed amended complaint fails to state a claim and is futile, so too does the original complaint. Thus, Defendants' motion to dismiss Plaintiffs' original complaint is granted.

## IV.    CONCLUSION

Plaintiffs' Joel Paez and Belkis Teran's motion for leave to file an amended complaint [ECF 21] is **DENIED**. Defendants' motion to dismiss [ECF 18] is

---

[53]    *Compare* ECF 21-1 *with* ECF 1, ¶ 47.

[54]    ECF 21, at 1-2.

**GRANTED**. Plaintiffs' claims are **DISMISSED** with prejudice. The Clerk is

**DIRECTED** to close this case.

SO ORDERED this 30th day of March, 2026.

_____
Steven D. Grimberg
United States District Judge

32